UNITED STATES DISTRICT COURT
*DISTRICT OF NEW JERSEY*

RAVEL FERRERA PARRA,
Plaintiff, Pro Se,

v.

UNITED STATES DEPARTMENT OF AGRICULTURE (USDA),
SOCIAL SECURITY ADMINISTRATION (SSA),
NEW JERSEY DEPARTMENT OF HUMAN SERVICES (DHS),
DIVISION OF FAMILY DEVELOPMENT (DFD),
WORK FIRST NEW JERSEY (WFNJ),
MIDDLESEX COUNTY BOARD OF SOCIAL SERVICES (MCBSS),
PAT BYRD, in her official and individual capacity,
LINDA JAY, in her official and individual capacity,
MONICA DAVION, in her official and individual capacity,
NATASHA JOHNSON, in her official and individual capacity,
CARL SAVADGE, in his official and individual capacity,
DOE DEFENDANTS 1–50,
Defendants.

Case No.: _____
Judge: _____

## COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF

### INTRODUCTION

This case arises from the systematic denial of public benefits, retaliation against a disabled applicant, and the unlawful manipulation of digital records by state and federal agencies operating under the Work First New Jersey (WFNJ) program. Plaintiff Ravel Ferrera Parra, a disabled resident of Middlesex County, was denied emergency housing assistance, food support, and disability accommodations while recovering from critical brain surgery—all based on fabricated internal policies, falsified eligibility standards, and discriminatory enforcement practices.

The named Defendants—spanning the United States Department of Agriculture (USDA), the Social Security Administration (SSA), the New Jersey Department of Human Services (DHS), and its Division of Family Development (DFD)—engaged in a coordinated failure to uphold federal law, including the Americans with Disabilities Act (ADA), the Administrative Procedure Act (APA), and the Social Security Act. Local agents with the Middlesex County Board of Social Services (MCBSS) enforced non-promulgated documents like "DFD 08-05-04," misrepresented federal regulations, and manipulated Plaintiff's digital benefit profile to justify unlawful denials and retaliation.

This is not a routine administrative appeal. It is a constitutional and statutory challenge to a pattern of misconduct implicating the False Claims Act (31 U.S.C. §§ 3729–3733), the ADA (42 U.S.C. § 12132), civil rights under 42 U.S.C. § 1983, the Computer Fraud and Abuse Act (18 U.S.C. § 1030), and the Privacy Act (5 U.S.C. § 552a). Plaintiff further asserts claims under the Whistleblower Protection Act for targeted retaliation following reports of fraud and abuse to federal and state oversight bodies.

Through this action, Plaintiff seeks declaratory relief, compensatory and punitive damages, and judicial oversight to remedy constitutional injuries and systemic abuse within the administration of public benefits in New Jersey.

## I. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), as this case arises under the Constitution and laws of the United States, including the Fifth and Fourteenth Amendments, the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, the Social Security Act, 42 U.S.C. § 301 et seq., and the Administrative Procedure Act (APA), 5 U.S.C. §§ 701–706.
2. Jurisdiction is also proper under 28 U.S.C. § 1343 for claims brought under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act (N.J.S.A. 10:6-2(c)), as Plaintiff seeks redress for violations of civil rights under color of state and federal law.
3. This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367, as those claims arise from a common nucleus of operative fact with Plaintiff's federal claims.
4. This Court has jurisdiction to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.
5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), as the events and omissions giving rise to Plaintiff's claims occurred within the District of New Jersey, and all Defendants reside or conduct official duties within the State of New Jersey.

## II. PARTIES

6. Plaintiff RAVEL FERRERA PARRA is a resident of South Bound Brook, New Jersey, and a disabled individual entitled to protections under federal civil rights laws, the Americans with Disabilities Act (ADA), and other applicable statutes. Plaintiff may be contacted at: rferreraparra@gmail.com | (732) 900-7677.
7. Defendant UNITED STATES DEPARTMENT OF AGRICULTURE (USDA) is a federal agency responsible for administering the Supplemental Nutrition Assistance Program (SNAP), which was implicated in the improper denials and delays relevant to this case.
8. Defendant SOCIAL SECURITY ADMINISTRATION (SSA) is a federal agency responsible for administering federal disability and income programs. SSA failed to intervene or properly coordinate benefits with state agencies despite repeated notice of misconduct.
9. Defendant NEW JERSEY DEPARTMENT OF HUMAN SERVICES (DHS) is a state agency responsible for overseeing the Division of Family Development and implementing the Work First New Jersey (WFNJ) welfare program.

10. Defendant DIVISION OF FAMILY DEVELOPMENT (DFD) is a division within DHS responsible for direct administration of Emergency Assistance (EA), General Assistance (GA), and Temporary Rental Assistance (TRA) programs.

11. Defendant WORK FIRST NEW JERSEY (WFNJ) is a state-run program that provides welfare services, including housing and emergency assistance. Plaintiff's rights were violated through discriminatory and unlawful policies executed through this program.

12. Defendant MIDDLESEX COUNTY BOARD OF SOCIAL SERVICES (MCBSS) is a local agency tasked with implementing DHS and DFD programs at the county level. MCBSS was the direct administrator of Plaintiff's case and is central to the claims in this matter.

13. Defendant PAT BYRD is a supervisor within MCBSS. At all times relevant, Byrd was acting under color of state law and played a role in authorizing or permitting improper denials and discriminatory practices.

14. Defendant LINDA JAY is a social worker employed by MCBSS. Jay denied Plaintiff's reasonable requests for disability accommodation and improperly interpreted eligibility regulations, contributing to constitutional and statutory violations.

15. Defendant MONICA DAVION is an Assistant Administrative Supervisor at MCBSS. Davion issued formal denials of Plaintiff's Emergency Assistance without legal justification and failed to provide statutory citations or ADA compliance.

16. Defendant NATASHA JOHNSON is an employee of MCBSS whose correspondence reflected participation in the denial of benefits based on misapplication of internal memoranda and unsupported eligibility standards.

17. Defendant CARL SAVADGE is an official with MCBSS whose involvement included either direct participation or administrative oversight in the improper implementation of eligibility policies.

18. DOE DEFENDANTS 1–50 are unknown employees, agents, or officials acting under the authority of the above agencies or in conspiracy with them. Their identities will be disclosed through discovery.

## III. STATEMENT OF FACTS

**A. Systematic Denial of Public Benefits and Falsified Policy Enforcement**

- 1. Plaintiff applied for Emergency Assistance (EA) and General Assistance (GA) under the Work First New Jersey (WFNJ) program, which is federally funded and administered by the Division of Family Development (DFD) and Middlesex County Board of Social Services (MCBSS).
- 2. On September 27, 2022, Plaintiff submitted an initial complaint to the agency, objecting to the excessive documentation demands that went beyond any published legal requirement. He described the practice as abusive and invasive, noting that agents had created "a pretext to procedure" in order to delay or deny services. (EXHIBIT E/Pg 1)
- 3. In communications with Monica Davion, WFNJ officials used a fabricated and unverifiable policy—referred to as DFD 08-05-04—to justify Plaintiff's denial. Davion falsely claimed the rent charged under a valid lease was ineligible because it exceeded a fictional Fair Market Rate and that housing costs must be divided among all household members. (EXHIBIT E/Pg 4)
- "Your room is above the Fair Market Rate... and you are renting a room in your mother's home, which must be taken into consideration."
- 4. Plaintiff responded by demonstrating that: (a) He had signed a formal lease agreement; (b) He lived independently with no shared financial or food resources; and (c) The proposed rent was under HUD's Fair Market Rent cap for a 1-bedroom in Middlesex County. Plaintiff objected to the application of a nonexistent "per capita" rent rule and demanded proper application of N.J.A.C. § 10:90-6.3. (EXHIBIT E/Pg 5)

- 5. Davion's decision was later formalized in an official denial citing DFD 08-05-04, but the document could not be located online or by other counties, according to Plaintiff's documented efforts. Multiple county agents confirmed they had never heard of the instruction, nor was it adopted via public rulemaking. (EXHIBIT E/Pgs 10–11)
- 6. The WFNJ caseworkers' assertions that rent must be "divided among household members" contradicted Plaintiff's lease status as a tenant with exclusive use of a private bedroom. As Plaintiff explained: "There is a difference between being a tenant and sharing as a family... I have no right to her mortgage, medical, or financial [documents]... I serve as a Single Unit toward benefits." (EXHIBIT E/Pg 20)
- 7. Despite these legal distinctions, the agency continued to treat Plaintiff as a member of his mother's household—without evidence, consent, or legal authority—solely to reduce or deny his benefit eligibility.
- 8. Linda Jay, Administrative Supervisor, doubled down on the denial by stating that "[they] could not provide the requested benefit because [Plaintiff] was not self-sufficient," ignoring the ADA context of urgent brain surgery recovery. (EXHIBIT E/Pg 80)
- Jay further dismissed cross-county legal inconsistencies by stating: "She couldn't care what other counties do."
- 9. In official communications from February 2023 through March 2023, Plaintiff provided updated proof of lease, proof of medical crisis (impending brain surgery), and invoked the ADA multiple times. No proper accommodation was granted. Instead, Pat Byrd, the designated ADA Coordinator, refused to acknowledge her legal role and denied having any ADA duties, even when confronted in recorded phone conversations. (EXHIBIT E/Pgs 80, 132)

B. Retaliation, Appeals Misconduct, and ADA Violations During Medical Emergency

- 10. After objecting to the agency's fabricated housing policy, Plaintiff was subjected to targeted retaliation, including the unexplained suspension of his SNAP benefits and manufactured procedural delays in the Emergency Assistance application process.
- 11. On November 28, 2022, Plaintiff informed agency officials and ethics oversight bodies that he was being "inflicted with a ridiculous amount of anxiety and ADHD [hyperfocus]" due to improper rule enforcement and urgent housing insecurity. He formally invoked N.J.A.C. § 10:90-6.3 and ADA protections to justify expedited relief. (EXHIBIT E/Pg 2)
- 12. The WFNJ response was dismissive. Davion's follow-up email admitted that her office had already prepared the denial, pending Plaintiff's submission of additional documents they knew he could not obtain. (EXHIBIT E/Pg 4)
- 13. On January 3, 2023, Plaintiff submitted a formal grievance regarding malpractice in case management under Case No. S637121, stating: "Staff at WFNJ have deviated from NJ Code & Ethics... this has happened several times in my casework, likely from discrimination on my being a single male disabled veteran of color." (EXHIBIT E/Pg 7)
- 14. On February 5, 2023, Plaintiff requested that his brother be formally assigned as a third-party representative to assist in navigating program requirements in preparation for urgent brain surgery. Despite clear documentation and emergency medical status, no accommodations were made. (EXHIBIT E/Pg 8)
- 15. Plaintiff was later forced to request all appeal records and audio evidence directly from the Office of Administrative Law to challenge the Final Decision. In his request, he explicitly warned that the administrative decision was based on a false narrative and incomplete record. (EXHIBIT E/Pg 9)
- 16. On February 17, 2023, Plaintiff submitted an emergency action request warning that he faced imminent homelessness during critical brain surgery recovery. In response, WFNJ produced a copy of the mysterious DFD 08-05-04, which Plaintiff noted lacked legal standing. (EXHIBIT E/Pg 19)
- 17. Despite this, Linda Jay continued to demand irrelevant financial records and falsely stated that Plaintiff was seeking "medical housing" not covered by the EA program—even though such assistance is

- permitted for surgery recovery. (EXHIBIT E/Pg 35)
- 18. Plaintiff reminded Defendants that under the ADA, he was entitled to program modifications to prevent deprivation and discrimination. The Defendants failed to act. Plaintiff ultimately underwent brain surgery but had no recovery shelter due to WFNJ's inaction. (EXHIBIT E/Pg 31)
- 19. Upon discharge, Plaintiff requested support for temporary post-operative housing or reinstatement of his pre-approved lease—which was under HUD's FMR limits—but was told the agency still required his mother's utility bills and mortgage statements. (EXHIBIT E/Pg 32)
- 20. WFNJ's refusal to honor the lease, ADA accommodations, or provide temporary shelter during this time directly violated agency duties under the Social Security Act, ADA, and state public assistance laws.

C. Cybersecurity Abuse, False Digital Policies, and Whistleblower Suppression

- 21. On February 16, 2024, Plaintiff sent a mass report to the NJ Division on Civil Rights, NJOAG, and several other state and federal officials under the subject 'Action Required — Official Misconduct.' This correspondence alleged obstruction of law and suppression of fraud complaints submitted by Plaintiff. (EXHIBIT F/Pg 1)
- 22. In the February 16, 2024 email, Plaintiff wrote: 'Attempts to file police reports have been literally denied by desk officers… after revealing a familiarity with City Code Inspector Ivette Rios.' This suggests misuse of authority and cyber metadata suppression involving Plaintiff's submissions to oversight agencies. (EXHIBIT F/Pg 1)
- 23. On February 20, 2024, the DCA Housing Inspection Bureau responded to Plaintiff's email with: 'What is this in reference to?', showing a deliberate breakdown in agency accountability and cross-platform communication failures. (EXHIBIT F/Pg 2)
- 24. That same day, the NJOAG's Advocacy Institute asked to be removed from the email distribution list, confirming receipt but refusing to act or respond substantively. The matter was then rerouted to the Office of Constituent Services, with no follow-up action ever documented. (EXHIBIT F/Pg 3)
- 25. In his initial January 12, 2023 hearing before the Office of Administrative Law, Plaintiff presented direct evidence of misapplication of HUD FMR rules and denial of Emergency Assistance based on a fabricated 30%-then-halved rent formula. The ALJ ignored this testimony, refused to admit audio recordings, and summarily denied Plaintiff's claims. (EXHIBIT F/Pgs 7–22)
- 26. The Initial Decision falsely stated that Plaintiff's lease was above FMR despite HUD's 2023 FMR for Middlesex County being $1,515 and Plaintiff's lease being $1,450. The ALJ's conclusion was based on the same unverifiable DFD 08-05-04, which was not included in the administrative record. (EXHIBIT F/Pg 8)
- 27. In March 2023, Linda Jay reaffirmed the denial of post-surgical housing support via email, citing inapplicable program restrictions and falsely stating that WFNJ could not assist Plaintiff because his case involved 'medical shelter,' which is outside program scope. (EXHIBIT F/Pg 29)
- 28. Plaintiff had already rebutted this claim by citing that WFNJ is federally permitted to fund emergency shelter for individuals recovering from major medical procedures, especially when ADA accommodations are required. (EXHIBIT F/Pg 28)
- 29. In correspondence submitted with his February 2024 fraud complaints, Plaintiff noted: 'I uncovered that DFD instructions were being sourced through www.ccccunion.org… this site is not even a state domain.' This quote reflects the use of a third-party website to simulate official policy. (EXHIBIT F/Pg 66)
- 30. The referenced site, hosted by a children's care organization in Union County, appeared to contain the only accessible copy of DFD 08-05-04 cited by WFNJ staff. Plaintiff documented that it lacked HTTPS authentication, was not government-affiliated, and was being used to mislead applicants and suppress legal review. (EXHIBIT F/Pg 66)
- 31. Plaintiff warned that this third-party hosting of eligibility policies may constitute cyber fraud, privacy violations, and intentional disinformation under the Computer Fraud and Abuse Act and the Privacy Act. These warnings were ignored by DHS and WFNJ. (EXHIBIT F/Pg 66)

- 32. On March 2023, following Plaintiff's formal ADA requests and fraud complaints, City of Perth Amboy Code Enforcement Officer Ivette Rios appeared at Plaintiff's post-surgical recovery address to conduct an unrequested housing inspection. Plaintiff characterized this visit as retaliatory intimidation coordinated by WFNJ. (EXHIBIT F/Pg 55)
- 33. Plaintiff emphasized that no request for repair, renovation, or structural assistance had been made, and that the property was occupied lawfully under a lease agreement. The inspection constituted harassment and an illegal invasion of privacy during a medical recovery period. (EXHIBIT F/Pg 55)
- 34. WFNJ later altered digital records in Plaintiff's SNAP and GA profiles to retroactively classify him as residing in a multi-person household, despite years of independent eligibility. No documentation, consent, or notice was provided. (EXHIBIT F/Pg 37)
- 35. Plaintiff requested an audit trail identifying who signed off on the digital reclassification and when it occurred. The agency refused to respond. (EXHIBIT F/Pg 37)
- 36. This manipulation of digital case files, concealment of metadata, and refusal to produce record access logs constitutes a violation of 18 U.S.C. § 1030 (Computer Fraud and Abuse Act) and 5 U.S.C. § 552a (Privacy Act).
- 37. Despite alerting federal agencies (USDA, SSA) and state watchdogs about these systemic abuses, Plaintiff received no written justification for the sudden decrease in benefits and was forced to rely on limited SNAP support with no emergency shelter. (EXHIBIT F/Pg 38)
- 38. The coordinated failure to respond, together with manipulation of digital portals and targeting of Plaintiff for whistleblower retaliation, supports a pattern of fraud, civil rights deprivation, and obstruction of justice involving state and federally funded benefit systems.

---

## IV. CLAIMS FOR RELIEF

**COUNT ONE – VIOLATION OF THE FALSE CLAIMS ACT**

**(31 U.S.C. §§ 3729–3733) — Against WFNJ, MCBSS, DFD, DHS, SSA, and USDA**
1. Plaintiff realleges and incorporates by reference all preceding paragraphs.
2. Defendants knowingly submitted, endorsed, or facilitated false statements and certifications to federal agencies, including SSA and USDA, concerning Plaintiff's eligibility for federally funded assistance programs such as SNAP, General Assistance (GA), and Emergency Assistance (EA).
3. WFNJ and DFD agents, including Monica Davion and Linda Jay, fabricated benefit policies—such as invoking non-promulgated internal memos (e.g., DFDI 08-05-04)—and enforced them through digital case systems lacking audit oversight.
**(EXHIBIT E/Pgs 4, 6, 10–11)**
4. These practices led to the fraudulent retention of federal funds, unjust denial of services to eligible applicants, and systemic misreporting to federal agencies.
5. The denials were not mere clerical errors but calculated administrative actions intended to reduce disbursement of benefits and protect agency contracts and budgets in violation of 31 U.S.C. § 3729.

**COUNT TWO – VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (ADA)**

**(42 U.S.C. § 12132) — Against DHS, WFNJ, MCBSS, Pat Byrd, and Linda Jay**

6. Plaintiff is a qualified individual with a disability, having undergone brain surgery and requiring reasonable accommodations during post-operative recovery.

7. Defendants failed to provide such accommodations, denied Plaintiff's disability status, and actively obstructed access to EA and GA programs despite documented medical needs.
**(EXHIBIT E/Pgs 8, 20, 31, 35)**

8. Pat Byrd, the designated ADA Coordinator, disclaimed her role and refused to act on repeated accommodation requests.
**(EXHIBIT E/Pgs 80, 132)**

9. The failure to provide meaningful accommodation and program access resulted in increased risk of homelessness and medical harm, violating Title II of the ADA.

**COUNT THREE – CIVIL RIGHTS VIOLATIONS**

**(42 U.S.C. § 1983 – Due Process & Equal Protection) — Against All Defendants (Official & Individual Capacities)**

10. Defendants, acting under color of law, deprived Plaintiff of protected liberty and property interests in public benefit programs without lawful process or justification.

11. Plaintiff was denied the opportunity to present evidence, challenge fabricated policies, or receive adjudication based on lawfully promulgated standards.

12. Agencies selectively enforced internal rules, applied them discriminatorily to Plaintiff as a disabled, single male veteran of color, and suppressed appeals and grievances.

13. These actions violated Plaintiff's procedural due process and equal protection rights under the Fourteenth Amendment.

**COUNT FOUR – VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT**

**(5 U.S.C. §§ 701–706) — Against DHS and DFD**

14. DFD and DHS enforced non-promulgated internal documents, including DFDI 08-05-04, as binding policy in violation of the APA.

15. These internal directives lacked public notice, transparency, and legal authority under the New Jersey Administrative Code.

16. Denials based on such documents were arbitrary, capricious, and unsupported by formal rulemaking procedures, subjecting them to invalidation under 5 U.S.C. § 706(2)(A).

**COUNT FIVE – VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT & THE PRIVACY ACT**

**(18 U.S.C. § 1030 and 5 U.S.C. § 552a) — Against WFNJ, MCBSS, and DOE Defendants**

17. Defendants unlawfully accessed, altered, and manipulated Plaintiff's digital case file and benefit eligibility profile without consent or authorization.

18. Plaintiff's household classification and eligibility data were fraudulently modified using non-government websites and simulated policy citations, without transparency or proper recordkeeping.
**(EXHIBIT E/Pg 37)**

19. Defendants also suppressed audit trails and refused to provide Plaintiff access to electronic case logs, violating 18 U.S.C. § 1030 and 5 U.S.C. § 552a.

**COUNT SIX – VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO)**

**(18 U.S.C. §§ 1962(c), (d)) — Against WFNJ, DFD, MCBSS, and Named Individuals**

20. Defendants operated and conspired within a coordinated enterprise (WFNJ/DFD) that engaged in racketeering activity including:

- Mail fraud related to fabricated notices and denials;
- Wire fraud via digital manipulation of case data and benefit eligibility;
- Retaliatory threats using municipal tools (e.g., unauthorized housing inspections).

(**EXHIBIT E/Pgs 42, 55–56**)

21. These actions reflect continuity, shared purpose, and coordination among agencies to deprive Plaintiff of lawful benefits and suppress his rights.

**COUNT SEVEN – VIOLATION OF THE WHISTLEBLOWER PROTECTION ACT**

**(5 U.S.C. § 2302) — Against DHS, DFD, and MCBSS**

22. Plaintiff engaged in protected whistleblower activity by reporting systemic fraud, procedural abuse, cyberfraud, and ethics violations to federal and state agencies, including USDA, SSA, and DHS.

23. In retaliation, Defendants:

- Obstructed Plaintiff's access to EA and GA programs;
- Illegally reduced or stripped benefits;
- Referred Plaintiff for retaliatory housing inspections;
- Fabricated procedural deficiencies to undermine his legal complaints.

(**EXHIBIT E/Pgs 19, 37, 42, 55–56**)

24. These acts constitute unlawful retaliation under the Whistleblower Protection Act and contravene public policy safeguarding disclosures of fraud against the United States.

**V. REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff **Ravel Ferrera Parra** respectfully requests that this Court enter judgment in his favor and award the following relief:

**A. Declaratory Relief**

1. A judicial declaration that Defendants unlawfully:
   - Engaged in systemic misrepresentation and misuse of public assistance eligibility rules;
   - Retaliated against Plaintiff for exercising his legal rights and reporting misconduct;

- Denied federally protected disability accommodations under the ADA;
- Tampered with digital benefit records and fabricated procedural denials without basis in law.

## B. Injunctive Relief

2. Plaintiff does not seek reinstatement into any public assistance programs due to ongoing safety concerns, discriminatory practices, and the systemic abuse embedded in the WFNJ infrastructure.

3. Instead, Plaintiff seeks a judicial order directing the full monetary valuation of the denied benefits and accommodations he was lawfully entitled to receive, calculated below.

## C. Monetary Damages (Estimated Minimum)

4. Based on applicable program guidelines, Plaintiff seeks full compensatory damages equal to the statutory maximum benefits wrongfully denied:

### a. General Assistance (GA):
- $277/month × 60-month (lifetime eligibility) = **$16,620**

### b. Emergency Assistance (EA):
- Estimated $500/month × 12-month statutory maximum = **$6,000**

### c. Supplemental Nutrition Assistance Program (SNAP):
- $250/month (single disabled adult) × 60 months = **$15,000**

### d. Housing Assistance (Fair Market Rent valuation):
- $1,731/month (FMR for 1-bedroom, Middlesex-Somerset-Hunterdon Area) × 60 months = **$103,860**

5. **Total Estimated Economic Damages: $141,480**

6. This figure represents the **floor** of Plaintiff's compensatory claim and does not yet account for:
   - Out-of-pocket medical losses;
   - Emergency shelter denial during urgent neurosurgical recovery;
   - Procedural obstruction of appeals and access to services;
   - Emotional distress and pain related to ADA violations;
   - Whistleblower retaliation.

## D. Punitive Damages

7. Plaintiff further seeks punitive damages against individual defendants in their personal capacities, including but not limited to **Pat Byrd, Linda Jay, Monica Davion, Natasha Johnson, Carl Savadge**, and DOE Defendants, for:
   - Willful fabrication of legal standards;
   - Knowingly disregarding medical urgency and ADA responsibilities;
   - Participating in or enabling digital case tampering;
   - Misusing public authority to intimidate and retaliate.

## E. Criminal and Oversight Referrals

8. Plaintiff requests this Court refer the conduct described herein to appropriate federal and

congressional oversight bodies, including but not limited to:
- **U.S. Department of Justice (DOJ)** – for civil and criminal fraud violations;
- **USDA Office of Inspector General (OIG)** – for SNAP manipulation and state contract violations;
- **DHS OIG and SSA OIG** – for ADA, program integrity, and digital systems abuse;
- **Congressional Oversight Committees** – for systemic failure in the administration of federal public assistance funds in New Jersey.

## F. Additional Relief

9. Plaintiff further seeks any additional relief as the Court deems just and proper, including:
   - Leave to amend this Complaint as discovery reveals additional harms;
   - Preservation of all evidentiary records and communications;
   - Reimbursement of costs associated with medical displacement, document recovery, and legal preparation.

**Respectfully submitted**,
**/s/Ravel Ferrera Parra**
232 Prospect St
South Bound Brook, NJ 08880
Phone: 732-900-7677
Email: rferreraparra@gmail.com
Dated: 03/24/2025


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Complaint was served on all listed Defendants via certified mail and/or electronic filing systems on the date indicated below.

Dated: 03/24/2025
Respectfully submitted,
Ravel Ferrera Parra
232 Prospect St
South Bound Brook, NJ 08880
Phone: 732-900-7677
Email: rferreraparra@gmail.com